# O'Brien *v.* Anniston Pipe-Works.

*Action by Workman against Employer, for Damages for Breach of Contract.*

1.  *Plea of set-off for over-payment.*—In an action for breach of contract by a workman against his employer, the work never having been completed as stipulated, a plea of set-off on account of an alleged over-payment, made while the work was in progress, must allege that

[O'Brien v. Anniston Pipe-Works.]

it was made by mistake, and in ignorance of the amount actually due, or that it was made in anticipation of work which was never performed.

2. *Reduction of damages without plea of set-off.*—Where the plaintiff sues to recover compensation for work done by him under contract with defendant in grading and excavating, or damages for a breach by defendant, the defendant may, without a plea of set-off, reduce the recovery on account of the plaintiff's use of the defendant's steam-shovel, at a price stipulated in the contract, as shown by the averments of the complaint.

3. *Liquidated damages or penalty.*—In a contract for the performance of work and labor by the plaintiff in grading and excavating ground for defendant, a stipulation that the plaintiff, failing to complete the work within the time specified, shall be liable for the wages of defendant's superintendent and inspector until the completion of the work, makes the wages liquidated damages and not a penalty.

4. *Damages to employer on non-performance by workman.*—In an action by a workman against his employer, for work done under contract between them, or damages for a breach by the employer, if it appears that the work was not done as stipulated, and that it was completed by the employer at his own expense; he is entitled to recover, under the plea of set-off, the difference between the price actually paid by him for the completion of the entire work and the price agreed to be paid to the plaintiff, although some of the work was completed at less than the agreed price.

APPEAL from the Circuit Court of Calhoun.

Tried before the Hon. LEROY F. BOX.

This action seems to have been brought by W. P. O'Brien against the Anniston Pipe-Works, to recover compensation for work and labor done by plaintiff for defendant, or damages for an alleged breach of the contract between them. The transcript has not come to the hands of the reporter, and he can only publish the opinion.

KELLY & SMITH, CALDWELL & JOHNSTON, for appellant.

BROTHERS, WILLETT & WILLETT, *contra.*

CLOPTON, J.—On July 8, 1887, the parties entered into a written contract, by which plaintiff agreed to furnish at his own cost and expense all necessary materials, labor and tools, and to do all grading and excavating at the buildings and plants of the Anniston Pipe-Works, in a substantial and workmanlike manner, according to the plans and specifications furnished by the engineer or superintendent, for the sum of twenty cents for every cubic yard of surface excavation, and twenty-five cents for every cubic yard of excavations for pits, and to pay the company eight cents for every cubic yard of earth removed by the use of its steam-shovel. Plaintiff further stipulated, that the excavations should be carried on at such places as the engineer may direct, and completed within

[O'Brien v. Anniston Pipe-Works.]

forty-five days from the date of the contract; and if he failed to complete them within the time specified, he should be liable for the wages of the superintendent and inspector from the specified time to the date of the engineer's certificate of the completion of the work, and the amount of such wages should be deducted from any money due him by the company. Plaintiff also claims that, subsequently, he and the superintendent agreed to modify the contract, whereby defendant was to pay forty cents for every cubic yard of a compact clay, commonly known as "hard pan," which plaintiff encountered in the progress of the grading and excavation. As to the modification, the evidence is conflicting.

Plaintiff sues to recover damages for the breach of the contract as so modified. We thus limit the purpose of the suit, because, under the evidence, the common counts and the special counts, except the last three, may be eliminated from the case. The ninth count declares on the contract and modification according to their legal effect; the tenth, upon the written contract alone, setting it out in *hæc verba;* and the eleventh, upon the modification as a separate and distinct contract, without reference to, and independent of the original contract. Sustaining the demurrers to the second breach assigned in the ninth and eleventh counts, overruling the demurrers to the third and tenth pleas, and giving the charges requested by the defendant, constitute the assignments of error.

The third plea seeks to set off against the demand of plaintiff an amount averred to have been prepaid in excess of the sum due. As a general rule, a plea of set-off must state facts which would constitute a good cause of action, if the party pleading were the plaintiff in the prosecution of a suit therefor. *Eads v. Murphy,* 52 Ala. 520. The averments of the plea are meagre. It does not state the circumstances under which the over-payment, if any, was made; whether in anticipation of work to be done in the future, or by mistake, and in ignorance of the amount actually due. An over-payment, voluntarily made with knowledge of the facts, is not recoverable, unless made for work to be thereafter done, which plaintiff failed to do. The plea fails to state such facts as entitle defendant to recover the amount, and is insufficient as a plea of set-off. The tenth plea, which is also a plea of set-off, though general in its terms, is not obnoxious to the same objection.

The court instructed the jury, that defendant "is entitled to a credit of eight cents per cubic yard for every cubic yard of earth which the evidence shows was removed by plaintiff by means of the steam-shovel." By the terms of the contract, defendant was authorized to retain the amount plaintiff agreed

to pay for use of the steam-shovel, out of any money due plaintiff on a final settlement; and in a suit on the contract, the breach assigned being the failure of defendant to pay the sum agreed on for the work, the amount agreed to be paid is a diminishing element in the measure of plaintiff's recovery, which must necessarily be reduced accordingly. This stipulation in the contract, being averred in the complaint, need not be set up by plea, and a plea of set-off is not essential to enable defendant to obtain credit for the amount. Neither does the charge invade the province of the jury. If the sum had been paid, or retained in a previous settlement, the burden is on plaintiff to establish such payment or retainer; and in the absence of any evidence tending to show payment, or that any estimate of the number of yards removed with the steam-shovel had been made, the court might well assume its non-payment.

The court further charged the jury, that if plaintiff failed or refused to carry out and complete the contract, unless defendant had first broken it, and defendant was compelled to do the work, then defendant would be entitled to set off the difference between what it necessarily paid, and the price it would have had to pay plaintiff, if he had completed the contract, and also the wages of the superintendent during the delay. It was clearly competent for the parties to agree upon a definite sum to be paid defendant as a compensation for the injury resulting from default of plaintiff in the performance of the contract. That the excavations were not completed within the time specified, is undisputed; the failure was a breach of the contract. The liability of plaintiff as a consequence of such breach, for the wages of the superintendent, depends upon the question, whether the stipulated sum is to be regarded as liquidated damages, or as a penalty. The general rules for determining this question are clearly and explicitly stated in *Keeble v. Keeble,* 85 Ala. 552; repetition of them is unnecessary. The nature of the agreement, the terms employed, the subject of the contract, the peculiar circumstances, and the intention of the parties, are the controlling considerations. The subject-matter of the present contract was grading and excavating the plant of the defendant; the object, its completion at the earliest practicable moment; and the compensation is fixed for a complete default in the performance. The manifest intention was to compensate defendant for the additional and necessary expense that would ensue from the continued employment of a superintendent to furnish specifications, give directions, and superintend the execution of the work. The sum agreed on is not disproportionate to the inju-

[O'Brien v. Anniston Pipe-Works.]

rious consequences resulting from the failure to complete the work within the specified time, and is dependent upon the length of time thereafter occupied by plaintiff in finishing the work. The wages of the superintendent must be regarded as stipulated damages.

It clearly apppears from the evidence that plaintiff abandoned the contract in November, 1887, without having made the excavations for the pits, and that, in order to finish the excavations which plaintiff agreed to do, defendant had afterwards excavated two thousand cubic yards of "hard pan," at a cost of thirty-five cents, all of which, it is shown, was necessary and reasonable at that season of the year. The charge is based on the hypothesis, that plaintiff failed or.refused to carry out and complete the contract, and that defendant had first broken it. Therefore, whether plaintiff was excusable in so failing or refusing is immaterial in considering the propriety of the charge. This question was properly submitted to the jury. Undoubtedly, if there was no breach on the part of defendant, and plaintiff refused to complete the contract without justifiable cause, he is liable to defendant for the difference between the sum the company paid to finish the work, and the price agreed to be paid plaintiff, if it was less than the cost to defendant. It is contended that, according to plaintiff's version, defendant agreed to pay him forty cents for every cubic yard of "hard pan," and as it only cost defendant thirty-five cents, the charge authorizes defendant to recover the difference, although it proved a profit instead of injury. This contention too narrowly limits the operation of the charge. It is not confined to the excavations of the "hard pan" alone, but also includes the excavations for the pits; and the evidence shows that, when taken together, the cost·to defendant was largely in excess of the price agreed to be paid to plaintiff.

The first charge is confined to the difference between the cost to defendant and the price agreed to be paid plaintiff for excavating the pits, and under the evidence is unobjectionable. But the fifth charge is limited to the surface excavations, and is obnoxious to the objection. Whether defendant agreed to pay twenty or forty cents for every cubic yard of "hard pan" excavated, and whether the "hard pan" was surface excavation, was a matter of dispute, as to which the evidence was conflicting. Whether the cost of such excavation to defendant exceeded the price agreed to be paid plaintiff, depended on the determination of these questions. The charge withdrew from the consideration of the jury the evidence relating thereto, and assumes, that defendant agreed to pay only twenty cents.

If there was error in sustaining the demurrers to the second

[Houston v. Farris & McCurdy.]

breach in the ninth and tenth counts, it was error without injury, as it is undisputed that defendant did not have the work done until after plaintiff abandoned the contract.

For the errors mentioned, the judgment is reversed, and the cause remanded.